**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-03-289 (2) |
| | § | C.A. No. C-05-170 |
| JOSE LUIS BALDERAS, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**
**AND GRANTING LIMITED CERTIFICATE OF APPEALABILITY**

Pending before the Court is Jose Luis Balderas' ("Balderas") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 83),[1] which the Court deems filed as of April 6, 2005.[2] The Court ordered the government to respond, and the government filed a response in which it also moves for summary judgment, or, in the alternative, for dismissal of the motion. (D.E. 103). Balderas sought and was granted an extension of time to file a reply, and his reply was filed on September 15, 2005. (D.E. 108). As discussed in detail herein, some of Balderas' claims are subject to dismissal because he waived his right to file those claims. His other claims, which fall outside the scope of his waiver, fail on their merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court GRANTS Balderas a limited Certificate of Appealability ("COA").

---

[1] Dockets entries refer to the criminal case, C-03-cr-289.

[2] Although Balderas' motion was received by the Clerk on April 8, 2005, it is dated April 6, 2005. Thus, April 6, 2005 is the earliest date it could have been delivered to prison authorities for filing, the pertinent act for deeming a document filed by a *pro se* prisoner under Houston v. Lack, 487 U.S. 266. 276 (1988). See also United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992) (providing benefit of Houston v. Lack to *pro se* prisoner in § 2255 proceedings). The Court deems it filed as of the earlier date. Utilizing either date, the motion is timely.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II.  FACTS AND PROCEEDINGS

On October 22, 2003, Balderas was charged in eight counts of a thirty-three count indictment, along with several co-defendants. (D.E. 1).  Specifically, he was charged with one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 371, 1341 and 1343 ("Count One"); one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h) ("Count Fourteen"); and six counts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1342. (D.E. 1).  On January 27, 2004, Balderas pleaded guilty to Count One and Count Fourteen.  His plea was pursuant to a written plea agreement governed by Rule 11(c)(1)(B), Fed. R. Crim. P.,[3] and did not bind the Court to impose a sentence from any particular sentencing range. (D.E. 54, 55).[4]  In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive the maximum credit for acceptance of responsibility, to recommend a sentence at the lowest end of the applicable guideline range, and to move for the dismissal of all remaining counts after sentencing. (D.E. 55 at ¶ 2).

The written plea agreement also contained a statement that the parties agree that the applicable sentencing guidelines should be calculated in a specific manner.  (D.E. 55 at ¶ 2).  In an accompanying chart reflecting the agreement, Balderas' adjusted offense level, after acceptance of responsibility, was 21 on Count One and 23 on Count Fourteen.  The parties agreed that the higher offense level

---

[3]  The agreement itself erroneously refers to Rule 11(e)(1)(B), which is where the text of what is now Rule 11(c)(1)(B) was located prior to the 2002 Amendments to the Rule.  See Fed. R. Crim. P. 11, advisory committee notes; see also D.E. 95, Rearraignment Transcript ("R. Tr.") at 35 (AUSA noting the error).

[4]  This is in contrast to a plea agreement under Rule 11(c)(1)(C), which would be binding on the Court once accepted.

would be utilized and, when coupled with a criminal history category of I, Balderas' range of imprisonment would be 46 to 57 months.  (Id.)

The plea agreement included a voluntary waiver of Balderas' right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant waives the right to appeal the sentence imposed or the manner in which it was determined.  The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States.  Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 55 at ¶ 6) (emphasis in original).  The agreement was signed by both Balderas and his counsel. (D.E. 55).

At Balderas' rearraignment, after the agreement was summarized by Assistant United States Attorney Ken Cusick ("AUSA" or "Mr. Cusick"), Balderas testified that the summarized agreement was his plea agreement, that he understood it, that it was the entire agreement, and that there were not any other agreements or promises made to him that were not contained in that written agreement, including any promises of leniency or a motion for downward departure for substantial assistance. (D.E. 95, Rearraignment Transcript ("R. Tr.") at 34-39).

The Court then showed Balderas a written copy of the plea agreement.  Balderas testified that the agreement was his, that he had signed it, and that he had read it completely and discussed it completely with his attorney before signing it.  (R. Tr. at 39-40).

The Court also questioned Balderas under oath at the rearraignment to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal

rights and right to file a § 2255 motion.  In ensuring that his waiver of § 2255 rights was knowing and

voluntary, the Court asked Balderas:

> **THE COURT:** You're also giving up another right, a post-conviction
> remedy, called a "Writ of Habeas Corpus" or a Statutory 2255, which
> means you could, whether or not you decided to appeal, you could file
> a motion to try to set aside your conviction alleging non-jurisdiction or
> constitutional claims or such matters as ineffective assistance of
> counsel.
>
> If you go forward today, you give up that right.  Do you understand
> that?
>
> ***
>
> And Mr. Balderas?
>
> **DEFENDANT BALDERAS**: Yes, your Honor.

(R. Tr. at 43).  It is clear from the foregoing that Balderas' waiver of § 2255 rights was knowing and

voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any

waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report

("PSR") and sentencing occurred on April 14, 2005.  There were two key differences between the

specified guideline calculation in the plea agreement and the calculation in the PSR. (Compare D.E.

55 at ¶ 2 with PSR at ¶¶ 36-45).  First, the plea agreement  specified that the amount of loss for the

offense was less than $1,000,000, resulting in a fourteen-level increase pursuant to U.S.S.G.

§ 2B1.1(b)(1)(I).  The PSR, on the other hand, calculated the loss to be more than $1,000,000,

resulting instead in a sixteen-level increase to the offense level.  Second, the plea agreement specified

that the number of victims was more than ten, but less than fifty, resulting in a  two-level increase to

the offense level, pursuant to U.S.S.G. § 2B1.1(b)(2)(B).  By contrast, the PSR concluded that the

number of victims was more than fifty, and added four levels, instead of two.  Thus, the total offense

level in the PSR, after adjustment of responsibility, was 27, instead of 23 as set forth in the plea

agreement.   Coupled with Balderas' criminal history category of I, the resulting range for a term of imprisonment was 70 to 87 months.  (S. Tr. at 63).

The government recommended to the Court that it sentence Balderas based on an offense level of 23 instead of 27, because of his plea agreement.  (S. Tr. at 64).  The Court asked the AUSA if he was making a motion for downward departure and he replied that he was not.  (S. Tr. at 64).  The Court then noted:

> THE COURT: So I can't see any reason to downwardly depart for Mr. Balderas, that is to depart from the guidelines without a motion from the Government, can you?
>
> AUSA CUSICK: No, your Honor, but I'm just reiterating my recommendation of the Plea Agreement.

(S. Tr. at 65).

The Court sentenced Balderas to 87 months in the custody of the Bureau of Prisons, to be followed by a three-year supervised release term, and imposed a fine of $200, a $200 special assessment, and restitution in the amount of $ 1,659,695.69.  (D.E. 69, 72).  Judgment of conviction and sentence was entered April 17, 2004.  (D.E. 72).  Consistent with his waiver of appellate rights, Balderas did not appeal.  Balderas' timely § 2255 motion was filed April 6, 2005. (D.E. 83).

### III.  MOVANT'S ALLEGATIONS

In his motion and his reply, Balderas asserts a number of claims.  First, he claims that his Sixth Amendment right to a jury trial and Fifth Amendment right to due process were violated when the Court founds facts at his sentencing that were not alleged in the indictment and were not found by the jury beyond a reasonable doubt nor admitted by him.  He relies for support on the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005).  In his reply, he argues at length for the retroactive application of Booker.  He asks to be resentenced to time served. (D.E. 83 at 3-4).

5

Second, Balderas argues that he was denied effective assistance of counsel both at his rearraignment and his sentencing.  As to errors allegedly made by his counsel relating to his decision to plead guilty, Balderas claims that:

> !     his counsel failed to properly represent him during the plea negotiations, instead encouraging Balderas to accept the written plea agreement "without adversarial or legal arguments" (D.E. 83 at 23)

> !     his counsel should have obtained a binding plea agreement and that his failure to do so contributed to the higher sentence Balderas received; and

> !     his counsel failed to explain the waiver of appellate rights provision to him.

Balderas' claim of ineffective assistance at sentencing is based entirely on his claim that his counsel failed to raise objections to his sentence premised on Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 124 S. Ct. 2531 (2004), Booker's predecessors.

His motion also asserts three additional challenges to his plea agreement.  First, he claims that the Court failed to comply with the requirements of Rule 11 at the rearraignment.  Instead of explaining how he believes the Court failed to comply with Rule 11, he simply states in conclusory fashion that his plea agreement was not knowing voluntary or intelligent.  In his reply, he clarifies that he is challenging the voluntariness of his plea on the grounds that he believed he was "guaranteed" a sentence of 46 months and that the government would be able to ensure that he received this sentence.

Second, he claims that the Court "violated" the plea agreement by sentencing him at a higher offense level and to a longer term of imprisonment than he and the government had agreed to in the plea agreement.

Third, he claims that the United States Attorney's office breached the plea agreement, both because it failed to have the Court "accept" the plea agreement (i.e., the sentencing range set forth

therein) and because it "promised" to move for a one-third reduction in his sentence, but failed to do so.   He seeks specific performance of the agreement.

Finally, in both his motion and his reply, he requests that the Court reduce his sentence to "time served," and release him.   In addition to his legal arguments set forth above, he argues that he should be released from prison because he is sixty years old, is suffering from progressive Parkinson's disease, is a Vietnam veteran, and because he wants to spend time with his sons and grandsons and to take care of them.

The government has moved for summary judgment against Balderas' motion in its entirety on the grounds that it is barred by his waiver of § 2255 rights.   In the alternative, the government contends that his motion is subject to dismissal because the record in the case conclusively shows that no relief is appropriate as to his underlying allegations.

For the reasons set forth herein, Balderas' claims fail.

## IV.  DISCUSSION

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Balderas has procedurally defaulted his claims by failing to appeal. Rather, the Court concludes that he validly waived all of the claims unrelated to his plea, including his Booker claim, and thus it does not reach the merits of those claims. See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing a waiver of appeal rights that was signed prior to the issuance of Booker). Likewise, his claim of ineffective assistance at sentencing, which is based on Booker, falls within the scope of his waiver and is barred.

His claims challenging his plea agreement, however, including his claim that he received ineffective assistance of counsel when entering into the plea agreement, fall outside the scope of his § 2255 waiver, because they are direct challenges to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Thus, the Court turns first to these claims.

**B.     Claims Challenging Plea Or Waiver**

**1.     Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the

broad range of what is considered reasonable assistance and that this deficient performance led to an

unfair and unreliable conviction and sentence.  United States v. Dovalina, 262 F.3d 472, 474-75 (5th

Cir. 2001).  If the movant fails to prove one prong, it is not necessary to analyze the other.  Armstead

v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not

address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter

v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or

actual prejudice is fatal to an ineffective assistance claim.").

Balderas argues that his attorney was deficient for encouraging him to accept the plea

agreement, for failing to obtain a "binding" plea, and for failing to explain the appellate rights waiver

to him.  When viewing the record as a whole, it is clear that Balderas is not entitled to relief on any

of these claims, because he cannot show prejudice as to any of them.

In order to show prejudice arising from an attorney's ineffective assistance during the plea

negotiations or the plea itself, Balderas must show that, absence his counsel's deficiencies, he would

have proceeded to trial.  See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order

to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must

show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

This is a showing that cannot be met here.  The rearraignment transcript clearly establishes that

Balderas' decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Balderas testified that his attorney had answered all his questions, that

he was following Balderas' instructions, that his attorney made time to see him and take his phone

calls, that he was able to communicate completely with his attorney, and that he was satisfied with the

advice and efforts of his attorney. (R. Tr. at 20-22).  The AUSA summarized the counts of the

indictment that Balderas intended to plead guilty to, and Balderas expressed that he understood the government would have to prove each of those elements in order to convict him.  (R. Tr. at 24-27). The Court informed Balderas of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights.  (R. Tr. at 28-30).

Consistent with Rule 11, Fed. R. Crim P., the Court explained to Balderas the maximum punishment that he might receive.  Specifically, the Court informed him that for Count One, he could be sentenced to a maximum of five years in prison and a maximum fine of $ 250.  The Court also informed him that there was a mandatory $100 special assessment, and a maximum supervised release term of three years.  (R. Tr. at 44).  Balderas testified that he understood.  (R. Tr. at 44).  As to Count Fourteen, the Court explained that he could be imprisoned up to 20 years, making his total maximum punishment possibility 25 years, that he could be fined up to $ 500,000 or twice the value of the property, whichever is greater, that there was a maximum term of supervised release of five years and a $100 special assessment.  (R. Tr. at 44).  Again,  Balderas testified that he understood.  (R. Tr. at 44-46).

Balderas testified that no one had threatened him or forced him to plead guilty, that no one had promised him leniency for pleading guilty, that he understood that if his sentence was more severe than he expected, he would still be bound by his plea, and that his decision to plead guilty was entirely voluntary. (R. Tr. at 38-39, 53-55).

The transcript also establishes that Balderas understood that the guideline calculation set forth in the plea agreement would be only a recommendation by the government and that it would not be binding on the Court :

> THE COURT: Do you understand that I'm not a party to this agreement?  It's not binding on me in any way and you won't know whether I'll accept any part of this agreement until time of sentencing

> when it'll be too late for you to have any right to withdraw you plea?
> In fact, it's too late for you to have any right to withdraw you plea once
> you enter it.  Do you understand this? ... Mr. Balderas?
>
> DEFENDANT BALDERAS: Yes, Your Honor.

(R. Tr. at 40-41).  The Court later reiterated this point:

> THE COURT:  Do you understand that the final decision as to what
> your sentence will be rests with me and not with the U.S. Attorney?
> The U.S. Attorney does not represent the Court, nor does it speak for
> the Court in this case? ... Mr. Balderas?
>
> DEFENDANT BALDERAS: Yes, Your Honor.

(R. Tr. at 55).

Balderas' sworn statements in open court are entitled to a strong presumption of truthfulness.

United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431

U.S. 63, 74 (1977)).  Indeed, the Fifth Circuit affords "great weight to the defendant's statements at

the plea colloquy."  United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  Put simply,

Balderas' sworn statements preclude the relief he seeks here.  He knew of the potential punishment

he faced, he knew the recommendations of the government were not binding on the Court, and his plea

was knowing.  Moreover, he testified that his decision to plead guilty was voluntary and that no one

had forced him to plead guilty.  He further testified that he understood both that he was waiving his

right to appeal and his right to file any § 2255 motion.  Any claim that his counsel failed to properly

advise him in the plea process or that counsel was deficient for advising him to plead guilty fails.  His

own testimony shows that he understood the rights he was giving up by pleading guilty and that he was

doing so voluntarily.

Similarly, his claim that his attorney "should have" obtained a binding plea agreement is

wholly without foundation.  As an initial matter, there is no evidence that one was ever offered by the

11

government.  Indeed, the prosecutor's comments at the rearraignment reflect that it was clearly the intention of the government *not* to enter into a binding plea agreement.  (See R. Tr. at 35-36) (prosecutor noting that the plea agreements for Balderas and his co-defendant were "recommendation agreements by the Government holding not commending the Court to any sentence").  Moreover, this Court would not have accepted a plea agreement binding it to any particular sentencing range.  Thus, no prejudice arises as a result of any such failure by counsel, because the outcome of the proceeding would not have been any better for Balderas, even if his counsel had insisted on a "binding" agreement.

Balderas' challenge to the plea on the grounds that his counsel did not advise him as to the ramifications of waiving his appeal rights is likewise flawed.  He was advised by the Court that he was waiving his appellate and § 2255 rights, and he testified that he understood.  Thus, even if his counsel did not adequately explain those waivers to him, he cannot show any prejudice arising from that failure.  See  Lott v. Hargett, 80 F.3d 161, 167-68 (5th Cir. 1996) (a defendant suffers no prejudice due to receiving misinformation from his attorney where the plea colloquy reflects that the district court corrected any such misinformation).

In short, it is clear that Balderas cannot show that he would have insisted on going to trial but for counsel's performance, despite his bare allegations now to the contrary.  Thus, Balderas cannot prove the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether his counsel's performance was deficient. His claims of ineffective assistance in the plea process fail.

### 2.    Court's Alleged Failure to Comply with Rule 11 Requirements

As noted, Balderas also challenges his plea agreement and his waiver of § 2255 rights on a number of other theories.  First, he contends that the Court did not comply with Rule 11 requirements. He makes no effort, however, to identify what the Court failed to do.  His claim fails for this reason

alone.  See United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993) (conclusory allegations on a critical question do not raise a constitutional issue).  Moreover, a careful review of the rearraignment transcript does not reveal any Rule 11 failures.

To the extent he is claiming that his plea was involuntary because he was allegedly "guaranteed" a sentence of 46 months, his claim fails.  Again, he flatly denied that he was promised or guaranteed any sentence at his rearraignment.  A § 2255 movant may proceed on a claim that he was promised a specific sentence, in the face of his inconsistent statements under oath, only under narrow circumstances.  See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).  Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though inconsistent with his representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110.  A defendant is entitled to an evidentiary hearing on the issue if he can produce evidence showing the merit of his allegations, typically in the form of an affidavit from a reliable third party.  Id.

Balderas has not specified when or where the government supposedly made the alleged promise, nor has he identified an eyewitness to his claim, let alone provided any affidavit from a reliable third party.  To the extent he relies on the plea agreement for the promise, the plea agreement expressly denies that any particular sentence is being promised.  (See D.E. 55 at ¶ 5 ("Neither the government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court."); id. at ¶ 7 (reiterating point and noting that any prediction of the probable sentencing range received from counsel or the United States "is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court").  In short, then, his claim that he was "induced" into pleading guilty is foreclosed by his own testimony

13

and lack of any contradictory evidence as specified in <u>Cervantes</u>.  Balderas' claims that the Court failed to follow Rule 11 procedures or that he was promised a specific sentence are without merit.

### 3.      "Violation" of the Plea Agreement by the Court

Next, Balderas claims that his plea agreement is void because it was "violated" by the Court. Specifically, he contends that the Court was obligated to follow the recommendation of the government and the guideline calculation set forth in the plea.  His argument is without merit.  The plea agreement expressly was made pursuant to Rule 11(c)(1)(B), which is an agreement not binding on the Court. Moreover, the Court made this point clear during Balderas' rearraignment and he testified that he understood.  (R. Tr. at 40-41, 55).  The Court did not violate the agreement because it was not binding on this Court.

### 4.      Alleged Breach of Plea Agreement by Government[5]

Balderas' contention that the government breached the plea agreement is similarly flawed. Balderas claims that the government breached its agreement by: (a) failing to argue against enhancements applied by the PSI that were not in the plea agreement; and (b) failing to move for a downward departure.  After careful consideration, the Court concludes that both arguments lack merit.

---

[5] As with many of Balderas' claims, a direct claim of a breach of the plea agreement by the government should have been brought on direct appeal, and is likely procedurally barred from consideration here. <u>See</u> <u>United States v. Lopez</u>, 248 F.3d 427, 433 (5th Cir. 2001) (where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings). Construed liberally, however, Balderas' motion could be interpreted as arguing that his counsel was ineffective for failing to raise this issue at sentencing and on appeal.  "Cause and prejudice" for his procedural default can be shown if he could show that the reason the issue was not raised was due to the ineffectiveness of his counsel. <u>See</u> <u>United States v. Patten</u>, 40 F.3d 774 (5th Cir. 1994) (claim that appellate counsel was ineffective for failing to raise a constitutional issue on direct appeal satisfies the cause and prejudice standard).  Thus, the Court simply denies the claim on its merits, rather than addressing the issue of procedural default.

### a.    Breach Due to Failure to Argue for Specific Sentence Agreed to in Plea Agreement

To determine whether the government violated the plea agreement, the court "considers whether the Government's conduct was 'consistent with the defendant's reasonable understanding of the agreement.'" United States v. Munoz, 408 F.3d 222, 226 (5th Cir. 2005) (citations omitted); United States v. Keresztury, 293 F.3d 750, 756 (5th Cir. 2002)(citations omitted).  In the appeal brought by Balderas' co-defendant, Munoz, the Fifth Circuit held that the government had breached the plea agreement by arguing for an "abuse of trust" enhancement pursuant to U.S.S.G. § 3B1.3, even though no mention of such an enhancement was contained in Munoz's plea agreement.  Munoz, 408 F.3d at 228-29.  The Fifth Circuit reasoned that the government violated the agreement when the AUSA went beyond merely indicating or clarifying facts to the Court and actually argued in favor of the enhancement.  Munoz, 408 F.3d at 227-228.

The analysis in his co-defendant's case does not directly apply to Balderas because his sentence was not enhanced based on any "abuse of trust" finding, nor was there any discussion as to whether that enhancement would be applicable to Balderas.  Balderas argues, however, that the government breached its agreement with him by arguing at sentencing in favor of a "sophisticated means" enhancement and by allegedly arguing in favor of a four-level increase based on the number of victims, as opposed to the two-level increase specified in the agreement.

Balderas correctly notes that the government argued that his offense level should be enhanced two levels for the use of sophisticated means pursuant to U.S.S.G. § 2B1.1(b)(8)(C).  That argument did not constitute a violation of its agreement with Balderas, however, because the application of the enhancement was agreed upon in the parties' plea agreement.  (See D.E. 55 at ¶ 2). The government's conduct in supporting the "sophisticated means" enhancement was wholly proper.

Whether the government breached its agreement by its comments related to the enhancement for the number of victims is a more difficult question to resolve.[6]  Balderas' counsel argued at sentencing that the number of victims should have been lower, because Balderas  had attempted to withdraw from the conspiracy and some of the "victims" included in his total had been solicited solely by his co-defendant after Balderas had attempted to withdraw.  The Court heard testimony from Balderas as to whether or not he had withdrawn and, if so, when.  The Court also permitted his counsel to argue the point to the Court.  Ultimately, the Court concluded that there was insufficient evidence of an attempt to withdraw from the conspiracy.  (S. Tr. at 8-28).

During the course of the discussion of Balderas' withdrawal, the Court made several inquiries of the AUSA, Mr. Cusick, related to the supposed withdrawal.  In addition to giving factual information, one of Mr. Cusick's responses indicated that he did not believe there was a withdrawal. (S. Tr. at 27).  Additionally, when directly asked by the Court if he agreed that Balderas' "transfer" of clients to Munoz would not be an effective withdrawal from the conspiracy, Mr. Cusick stated that he agreed with the Court.  (S. Tr. at 27-28).  He further stated that he had no evidence that Balderas had withdrawn from the conspiracy. (S. Tr. at 28).

The court has carefully reviewed the transcript of the sentencing, and the foregoing comments are the only comments by Mr. Cusick that could even arguably constitute a breach of the plea agreement.  The question before the Court, therefore, is whether the AUSA's comments that there was no withdrawal (which indirectly supported the enhancement for a greater number of victims)  were

---

[6]  As previously noted, the two differences between the guideline calculation in the agreement were that Balderas got larger enhancements due to the Court's findings that the offense involved a higher amount of loss and a higher number of victims than the plea agreement had indicated.  Balderas does not appear to be arguing that the government breached its agreement by any comments made at sentencing as to the amount of loss enhancement. Indeed, there was no argument at sentencing regarding this issue, because Balderas' counsel conceded that the amount set forth in the PSI was correct. (S. Tr. at 8).  Clearly, then, the government did not breach its agreement with Balderas with regard to the amount of loss.

"inconsistent with the defendant's reasonable understanding of the agreement." <u>See</u> <u>Munoz</u>, 408 F.3d at 226; <u>Keresztury</u>, 293 F.3d at 756.  When taking the record as a whole, the Court is convinced that no breach occurred.

Unlike in the case of Balderas' co-defendant, Munoz, where the AUSA expressly argued for an enhancement not contained in the plea agreement, the AUSA's comments as to Balderas' withdrawal were simply clarifying factual information concerning the alleged withdrawal.  The AUSA made no comments directly supporting or urging the enhancement for the increased number of victims. When asked directly by the Court, the AUSA certainly should not have provided incorrect or misleading information to the Court about a withdrawal that did not happen, even if the lack of such a withdrawal resulted in a higher number of victims and a larger enhancement.  <u>See</u> <u>Munoz</u>, 408 F.3d at 227 (the government has a duty "to provide the sentencing court with relevant factual information and to correct misstatements," although it "may not hide behind this duty to advocate a position that contradicts its promises in a plea agreement").  Moreover, Mr. Cusick made the recommendation the government had agreed to make, and asked that the Court sentence Balderas based on the lower level set forth in the plea agreement.  (S. Tr. at 64).

Based on the foregoing, the Court resolves the question of whether a breach occurred against Balderas.  Because it recognizes that other reasonable jurists might disagree as to whether there was a breach, however, the Court grants Balderas a COA on this issue.  <u>See</u> <u>infra</u> at Section IV.D.

### b.    Breach Due to Failure to Ask for Downward Departure

Balderas also claims that the government was obligated to move for a downward departure and that the agents he debriefed with assured him he would receive such a departure. The agreement with the government provided that the decision as to whether to file a motion for substantial assistance

"rests within the sole discretion of the Government." (D.E. 55 at ¶ 3). The Court made sure that Balderas understood this prior to accepting his guilty plea:

> THE COURT: And if you choose to take advantage of this provision to render substantial assistance and in your opinion your assistance is substantial and truthful and the U.S. Attorney disagrees with you and does not file a Motion for Downward Departure, there's nothing you can do about it. Do you understand that? .. Mr. Balderas?
>
> DEFENDANT BALDERAS: Yes, Your Honor.

At sentencing, the government indicated that it would not be moving for a downward departure based on substantial assistance. (S. Tr. at 64-65). It was within the government's sole discretion to move for a substantial assistance departure, and it is clear from his testimony under oath that Balderas knew and understood this. Moreover, he has not presented any evidence of specific help he gave to the government such that it should be deemed "substantial." For these reasons, the government's decision not to move for a downward departure does not constitute a breach of the plea agreement.

Because the Court concludes that Balderas' various challenges to the plea agreement fail, his plea agreement, and his waiver of § 2255 rights contained therein, is valid and enforceable. Having determined that none of Balderas' challenges to his plea agreement or the plea process withstand scrutiny, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

## C.      Waiver of § 2255 Rights

It is clear from the rearraignment that Balderas understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 18-19). See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Balderas' statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302

F.3d at 283-84.  Those statements support the Court's conclusion that his wavier was knowing and voluntary.

Moreover, the fact that <u>Blakely</u> and <u>Booker</u> were not decided until after Balderas signed his waiver does not place any of his claims premised on <u>Booker</u> outside the scope of the waiver.  The Fifth Circuit has clearly held that "<u>Blakely</u> and <u>Booker</u> do not alter the plain meaning of appeal-waiver provisions in valid plea agreements."  <u>McKinney</u>, 406 F.3d at 746-47 & n.5; <u>see also</u>, <u>e.g.</u>, <u>United States v. Killgo</u>, 397 F.3d 628, n.2 (8th Cir. 2005) (enforcing waiver of appeal rights as to Sixth Amendment claim, noting that "[t]he fact that [defendant] did not anticipate the <u>Blakely</u> or <u>Booker</u> rulings does not place the issue outside the scope of his waiver"); <u>United States v. Rubbo</u>, 396 F.3d 1330, 1335 (11th Cir. 2005) (upholding waiver of appeal rights signed prior to <u>Blakely</u> in case raising <u>Booker</u> claim); <u>United States v. Bradley</u>, 400 F.3d 459, 465-66 (6th Cir. 2005) (enforcing defendant's waiver of appeal signed prior to <u>Booker</u> as barring his <u>Booker</u> claim and collecting federal circuit court authority in agreement).

In sum, the Court concludes that Balderas' waiver of his right to file a § 2255 motion is valid and enforceable.  Thus, while his ineffective assistance claims as to his plea are denied on the merits, and his challenges to the plea agreement itself fail on their merits, his remaining claims fall within the scope of his waiver. Therefore, they are not properly before the Court.  <u>See generally</u> <u>Wilkes</u>, <u>supra</u>; <u>White</u>, <u>supra</u>; <u>McKinney</u>, <u>supra</u>.  For these reasons, Balderas' § 2255 motion is DENIED in its entirety.

## D.    Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Balderas has not yet filed a notice of appeal, this Court nonetheless

addresses whether he would be entitled to a COA. <u>See</u> <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon <u>Slack</u>, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could debate whether this Court has properly resolved Balderas' claims that the government breached the agreement and that his counsel was ineffective for failing to object to the alleged breach or to raise it on appeal. While this Court believes it has properly resolved these claims, it recognizes that it is possible, although unlikely, that

another jurist could review the sentencing transcript and conclude that the government may have breached its agreement by its comments as to whether or not Balderas withdrew from the conspiracy. If the government did breach the agreement, then perhaps Balderas' counsel was ineffective for failing to object at sentencing and for failing to raise the issue on appeal.  Despite his waiver, had the issue been raised and found in Balderas' favor, he might have received the opportunity for resentencing, as did his co-defendant.  Thus, the Court grants him a COA as to this issue, should he choose to appeal from the denial of his § 2255 motion.

The Court's resolution of the breach issue also affects some of Balderas' other claims.  That is, if the Fifth Circuit were to determine that the plea agreement was violated by the government, then his waiver might well be invalid.  Thus, reasonable jurists could disagree about the validity of the waiver, as well.  Accordingly, Balderas is also granted a COA as to the claims that the Court has held were barred by his waiver.

As to the Court's resolution of Balderas' remaining claims, which include all other challenges to the plea agreement and his ineffective assistance claims related to his plea, the Court concludes that reasonable jurists could not debate the denial of those claims on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed.  Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484).  Balderas is not entitled to a COA as to those claims.

**E.      Reduction in Sentence Due to Age and Health**

Finally, Balderas also requests that the Court reduce his sentence because of his age and the fact that he is suffering from Parkinson's disease.  He professes that he wishes to see his sons and grandsons and to take care of them.  His allegations do not entitle him to relief under § 2255, nor are

they proper grounds for a reduction in sentence pursuant to 18 U.S.C. § 3582.[7] Accordingly, this Court

is without authority to grant him relief from his sentence on any of these grounds.

## V.  CONCLUSION

For the above-stated reasons, Balderas' motion under 28 U.S.C. § 2255 (D.E. 83) is

DISMISSED WITH PREJUDICE.  The Court also GRANTS Balderas a Certificate of Appealability

as to some of his claims, as explained in Section IV.D., supra.  As to his remaining claims, the Court

DENIES him a Certificate of Appealability.

Ordered this 13th day of December, 2005.

Janis Graham Jack
United States District Judge

---

[7] This Court has authority to modify or correct a previously imposed sentence only in the "limited number of circumstances" set out in 18 U.S.C. § 3582(c).  United States v. Bridges, 116 F.3d 1110, 1112 (5th Cir. 1997). These circumstances are limited to the following: (1) when the Bureau of Prisons moves the Court to modify the sentence for reasons outlined in § 3582(c)(1), (2) under Fed. R. Crim. P. 35 (on the government's motion due to substantial assistance or to correct a clerical mistake within seven days of the date the sentence was imposed), and (3) when the guidelines under which the defendant was sentenced have been subsequently lowered, and a modification of sentence is consistent with the guidelines' policy statements.  See § 3582(c). Although the illness of a defendant could possibly be the type of "extraordinary and compelling reason" warranting relief under § 3582(c)(1), that motion must be brought by the Bureau of Prisons, not the defendant himself.